

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**RECEIVED**

**JUN 27 2023**

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

LaChelle Bowers

_____ ,

**Plaintiff(s),**

vs.

_____

City of Chicago _____ ,

**Defendant(s).**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

23cv4134
Judge Kendall
Magistrate Judge Kim
Randomly Assigned CAT 1

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a* **pro se** *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.  This is a claim for violation of plaintiff's civil rights as protected by the Constitution and laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2.  The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3.  Plaintiff's full name is  La Chelle D. Bowers _____ .

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

1

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

4.    Defendant, __City of Chicago_____, is
                          (name, badge number if known)

☐ an officer or official employed by _____;
                                        (department or agency of government)

_____or

☐ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named defendant and complete the information for each additional defendant on an extra sheet.*

5.    The municipality, township or county under whose authority defendant officer or official

acted is___Cook_____. As to plaintiff's federal

constitutional claims, the municipality, township or county is a defendant only if

custom or policy allegations are made at paragraph 7 below.

6.    On or about_____, at approximately _____ ☐ a.m. ☐ p.m.
                      (month, day, year)
plaintiff was present in the municipality (or unincorporated area) of _____

___Chicago_____ , in the County of ___Cook_____ ,

State of Illinois, at _____ ,
                        (identify location as precisely as possible)

when defendant violated plaintiff's civil rights as follows *(Place X in each box that applies)*:

☐       arrested or seized plaintiff without probable cause to believe that plaintiff had committed, was committing or was about to commit a crime;

☐       searched plaintiff or his property without a warrant and without reasonable cause;

☐       used excessive force upon plaintiff;

☒       failed to intervene to protect plaintiff from violation of plaintiff's civil rights by one or more other defendants;

☐       failed to provide plaintiff with needed medical care;

☒       conspired together to violate one or more of plaintiff's civil rights;

☐       Other:

_____

_____

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____.

7.    Defendant officer or official acted pursuant to a custom or policy of defendant

municipality, county or township, which custom or policy is the following: (*Leave blank*

*if no custom or policy is alleged*):_____

_____

_____

_____.

8.    Plaintiff was charged with one or more crimes, specifically:

_____

_____

_____

_____

_____

9.    (*Place an X in the box that applies. If none applies, you may describe the criminal proceedings under "Other"*)  The criminal proceedings

☐  are still pending.

☐  were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

☐  Plaintiff was found guilty of one or more charges because defendant deprived me of a

fair trial as follows_____

_____ N/A _____.

☐  Other: _____.

_____

[1]Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

10.    Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

See Attached Complaint.

11.    Defendant acted knowingly, intentionally, willfully and maliciously.

12.    As a result of defendant's conduct, plaintiff was injured as follows:

13.    Plaintiff asks that the case be tried by a jury.    ☒ Yes        ☐ No

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

14.     Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or any other claim that may be supported by the allegations of this complaint.

**WHEREFORE,** plaintiff asks for the following relief:

A.     Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage and any other injuries inflicted by defendant;

B.     ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages against the individual defendant; and

C.     Such injunctive, declaratory, or other relief as may be appropriate, including attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: _LaChelle Bowers_

Plaintiff's name *(print clearly or type)*: _LaChelle Bowers_

Plaintiff's mailing address: _1616 E. 56th Street, #2508 Chgo. IL 60637_

City_____ State _____ ZIP _____

Plaintiff's telephone number: _(773) 962-7526_ .

Plaintiff's email address *(if you prefer to be contacted by email)*: _lachellechi@aol.com_

15.     Plaintiff has previously filed a case in this district.  ☐ Yes ☒ No

*If yes, please list the cases below.*

*Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff.  An additional signature page may be added.*

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IN THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

LACHELLE BOWERS
Plaintiff
v.
CITY OF CHICAGO
Defendant

## COMPLAINT

Plaintiff, LaChelle Bowers, submits the following Complaint against Defendant City of Chicago ("City"):

### NATURE OF ACTION:

I, LaChelle Bowers bring this suit pursuant to the Right to Sue as granted by the EEOC, the Illinois Whistleblower Act and common law retaliatory discharge. Ms. Bowers reserves the right to amend her complaint and add additional federal claims including claims under Title VII and the ADEA. Ms. Bowers alleges she was discriminated against in her job as Accounting Technician II for the City. She was harshly and unfairly disciplined, the City failed to promote her several times and the City discharged her in violation of the law and its contractual Agreement with AFSCME. She was also retaliated against for reporting the City's illegal conduct.

### Jurisdiction, Venue and Parties

1. This Court has jurisdiction over all defendant of the City of Chicago as it is an Illinois municipal corporation(s) with its principal places of business located in the State of Illinois.

2. This Court also has jurisdiction over Plaintiff LaChelle Bowers as she is a resident of the State of Illinois.

1

3. This case is brought under charge # 21B-2018-00966 Right to Sue as granted by the U.S. Equal Opportunity Commission dated 4/7/2023.

4. The Right to Sue allows a Plaintiff to commence a civil action in circuit court within 90 days of the finding and Plaintiff is within that time frame.

### Facts

5. Plaintiff LaChelle Bowers is an African American female over the age of 40.

6. Ms. Bowers began working at the City of Chicago as Program Auditor I in April 2007.

7. Ms. Bowers became an Accounting Technician II on October 1, 2012.

8. Ms. Bowers performed her duties very well as an Accounting Technician II. She was results oriented, solution focused and consistently outperformed all of the other Accounting technician's quarterly, semi and annual productivity.

9. The IRIS system utilized at the City tracks the work of each employee once logged in under a unique identifier and employees were able to view collective bodies of work product for all employees for specified time frames.

10. Since 2012 Ms. Bowers would outperform others, doing at least twice as much work as the next Accounting Technicians. She would respond in writing, via email, to tens of thousands of taxpayers/business owners on behalf of the City, registering and reconciling taxpayer business accounts.

11. From 2014 to 2016, Ms. Bowers applied 6 times to be promoted to the Auditor I position.

12. There were an additional 3 times the position was advertised where Ms. Bowers could have been promoted pursuant to the Collective Bargaining Agreement 12.7.

13. Ms. Bowers was more than qualified for this promotion.

14. Ms. Bowers was essentially already doing the job for Auditor I while working as an Accounting Technician II.

15. Ms. Bowers applied for the Auditor I position in June 2014.

16. On November 24, 2014 she received a one-day suspension.

17. Ms. Bowers applied for the Auditor I position in December 2014.

18. In March 2015 she received a 3-day suspension.

19. Ms. Bowers applied for the Auditor I position in May 2015.

20. In July 2015 she received a 7-day suspension.

21. Ms. Bowers applied for the Auditor I position in October 2015.

22. In October 2015 she was given a 15-day suspension.

23. In April 2016 she was given a 29-day suspension.

24. Ms. Bowers applied for the Auditor I position in August 2016.

25. She was given a 29-day suspension in September 2016.

26. Ms. Bowers was the only Accounting Technician II in the tax division with a Bachelor's degree and the required minimum criteria of 15 credit accounting hours to qualify for the Auditor I position.

27. Over the time she applied, there were approximately 40 vacancies for the Auditor I position.

28. No African American candidates were hired to the position of Auditor I until Ms. Bowers complained of such to the City EEO and the Chicago Commission on Human Relations ("CCHR").

29. After her complaints, Joel Flores, the Deputy Director finally hired an African American, Antinette Williams in 2015.

3

30. Ms. Bowers collected more revenue than any other Accounting Technicians for the City of Chicago, yet this never factored into the nine times she should have been promoted to Auditor I.

31. Ms. Bowers never received a superior evaluation for her performance.

32. Deputy Director Joel Flores could not tell Ms. Bowers why she was never selected by interview or promoted per the Collective Bargaining Agreement ("CBA") for the approximate 40 Auditor I vacancies.

33. By the makeup of his new hires, it was clear Director Flores preferred Caucasian and Hispanic, less qualified and younger candidates. Some of these new hires were fired before their probationary period ended.

34. After finding out about the probationary terminations, Ms. Bowers would again request to be promoted again, but every time she was denied.

35. Ms. Bowers also complained that there was nothing technical about the interview process for the Auditor I position.

36. For the first four advertisements for the Auditor I position, the interview consisted of five very basic, non-technical, non-finance specific questions and also required a very simple writing sample.

37. Ms. Bowers was a superior candidate for the position of Auditor I because she had the job experience that outsiders could not have.

38. In her job, Ms. Bowers wrote to thousands of taxpayers on a quarterly basis, averaging 400-600 per month.

39. After Ms. Bowers' complaint regarding the interview process, the City changed the interview process to ten more technical questions, a three part excel computation word problem and a more detailed writing sample.

4

40. Ms. Bowers perfected every part of every interview, but she wasn't selected because Joel Flores preferred younger, non-African American candidates.

41. After each of the complaints regarding the interview process and unequal treatment, Ms. Bowers would be retaliated against and suspended.

42. The City utilized Ms. Bowers revenue generating ideas such as making enhancements that would reduce accounting errors and linking licensing information to aid in more quickly determining liabilities, improvements to the IRIS system and registering/taxing all taxis, liveries, ride share entities at the point of entry/exit at Midway and O'Hare airports.

43. These ideas were eventually implemented but were not used in consideration of Ms. Bowers' repeated interviews/requests to be promoted to the Auditor I position.

44. Ms. Bowers also reported that there was no analysis or sense of discretion in deactivating account taxes which essentially exempted payers from potential liability and revenues. Daniel Reichart, her supervisor, would get mad at Ms. Bowers when she made these reports and would assert that this was the way they've been operating for 20 years.

45. Ms. Bowers work was excellent, but she was always evaluated only good or satisfactory, receiving scores less than all Caucasian and Hispanic staff.

46. Prior to Ms. Bowers ever interviewing for the Auditor I position, her evaluations always included "keep up the good work."

47. Ms. Bowers' scores and false/retaliatory discipline were used to justify not promoting her to the division Auditor I position, even though she applied six times and was eligible nine times.

48. Per the City's internal reporting procedures (Finance department HR, EEO, OIG and its Unfair Hiring unit, Commission on Human Relations), Ms. Bowers began to

5

report misconduct, harassment, discriminatory (based on race) and subsequent retaliatory actions beginning in 2014.

49. Ms. Bowers filed the following discrimination cases based on race at the CCHR:

      a. Bowers v. City of Chicago, Dept. of Finance 15-E-61. Investigation closed 11/22/17.

      b. Bowers v. City of Chicago, Dept. of Finance 15-E-83. Investigation closed 11/22/17.

      c. Bowers v. City of Chicago, Dept. of Finance 16-E-11. Investigation closed 11/22/17.

      d. Bowers v. City of Chicago, Dept. of Finance 16-E-21. Investigation closed 12/12/17.

      e. Bowers v. City of Chicago, Dept. of Finance 16-E-27. Investigation closed 12/12/17.

      f. Bowers v. Flores and Reichart 16-E-46. Investigation closed 12/29/17.

      g. Bowers v. Flores and Reichart 17-E-05. Investigation closed 12/29/17.

      h. Bowers v. Reed and Flores 17-E-27. Investigation closed 12/29/17.

50. Ms. Bowers also filed with the City's internal EEO on 11/25/14 (discrimination, failure to promote, unfair hiring, retaliation and issuing false discipline), 10/1/15 (violence in the workplace against Daniel Reichart) and 9/26/16 (discrimination, failure to promote, retaliation, hostile work environment and wrongful discharge – this case is still pending).

51. Ms. Bowers also filed a discrimination charge (based on race) with the IDHR and the EEOC in November 2016.

6

52. Ms. Bowers reported Deputy Joel Flores for his unfair preferences in hiring, including advertising a discriminatory preference for Auditor I candidates that had received their degree on or after May 2011, which was advertised three times in 2015-2016 before Ms. Bowers reported to the City Department of Human Resources and it was removed.

53. Ms. Bowers was falsely and punitively disciplined (suspended 6 times) after each of the 6 times she bid and interviewed for the Auditor I position and questioned management as to why she wasn't selected.

54. In 2016 Ms. Bowers received 2 twenty-nine (29) day suspensions.

55. In April 2016, the day Ms. Bowers returned to work from the first (29 days) suspension, Daniel Reichart did not communicate with her at all.

56. At the end of that day at approximately 4:00 pm, Daniel Reichart placed a pre-disciplinary notice for a 29-day suspension on her desk. Ms. Bowers then filed internal complaints and emailed upper management. A few days later the notice was rescinded, only to be held and reissued six months later.

57. Ms. Bowers received this additional 29-day suspension in October 2016. After Ms. Bowers returned from this suspension, it was established Daniel Reichart and Ms. Bowers would only communicate only electronically.

58. Similarly situated Caucasian and Hispanic employees that produced more than 50% less work than Ms. Bowers and that were even caught sleeping on the job among other infractions, were not disciplined and were always treated better than Ms. Bowers.

59. Ms. Bowers was humiliated as it became common knowledge that she was denied promotions, trainings and given unfair evaluations.

60. Since October 2016, Ms. Bowers did not receive any discipline or verbal counseling, nor was she put on a performance improvement plan.

7

61.    Ms. Bowers did not receive a performance evaluation in 2017. In prior years she had received a bi-annual or annual review.

62.    On February 15, 2018 at approximately 2:00 p.m., Ms. Bowers was sent an email by her manager Darryl Reed to meet him in the conference room.

63.    Darryl Reed, Doneice Stevens, Susan Littlefield and Charles Sheppard were present in the conference room.

64.    Charles Sheppard informed Ms. Bowers that she was being placed on a 5-day administrative leave to respond to charges.

65.    Ms. Bowers was told to go back to her desk, to gather her belongings and leave for the day.

66.    Doneice, Charles and Darryl followed Ms. Bowers back to her desk, asked her for her identification badge and she was given a note indicating they had changed her City login and password.

67.    Ms. Bowers did her best to respond to the charges which was a collection of thirty-eight (38) emails spanning back to October 2016 combined with previous disciplines that are still under City investigation.

68.    Ms. Bowers stated in her response that she wasn't sure how she should appropriately respond if these emails were now somehow being utilized as discipline, as the protocol of communication and notification as outlined by the CBA Article 20 (Pre-disciplinary procedures) between AFSCME and the City of Chicago was being violated, the contractual Agreement between AFSCME and the City of Chicago was being breached for grievances 01-15-27-0048 (3 days suspension), 01 01-15-27-0004 (5 days suspension), 01-15-27-0063 (15 days suspension), 01-16-27-0076 (29 days suspension), 01-16-27-0090 (29

8

days suspension), 01-15-27-0969 (denied promotion), 03-14-27-0611 (working in a higher rated position). See attached copies and violated CBA Articles.

69.     Ms. Bowers questioned the integrity of her treatment and the process, she asserted violations of the CBA between AFSCME and the City of Chicago and violations of the City's own rules.

70.     Similarly situated White and Hispanic employees were not and have never been subjected to this process.

71.     Daniel Reichart was not even present in the conference room on 2/15/18, thereby denying Ms. Bowers a pre-disciplinary meeting and its proper notification in violation of the CBA and due process.

72.     On February 26, 2018 despite Ms. Bowers' concerns and the unequal treatment, Ms. Bowers was informed via email signed by Comptroller Erin Keane, that she was being discharged. No reason was given.

73.     There was a memo included in the charges dated 11/8/17 that had already been submitted to the City law department and had also already been signed by Comptroller Erin Keane. This would mean that prior to the date of the memo 11/8/17, the department of Finance should have properly provided Ms. Bowers with all of the pre-disciplinary measures/procedures as outlined in Article 20 of the CBA.

74.     On November 7, 2018, Ms. Bowers attended a fact- finding conference at the IDHR.

75.     Present were Ms. Bowers, IDHR Investigator Bertha Reyther, City of Chicago lawyer Nicole Dax, Finance Deputy Director Ramona Hallihan, Supervisor Daniel Reichart and Personnel supervisor Charles Sheppard.

9

76.     In the conference Daniel Reichart stated to IDHR Investigator Reyther that Ms. Bowers was terminated on February 26, 2018 for combative conduct.

77.     When Investigator Reyther asked for an example of "combativeness," Daniel Reichart stated that Ms. Bowers was required but would fail to call in and "speak" with him at least 30 minutes prior to her start time when calling off work.

78.     The fact-finding conference was the first time Ms. Bowers was told this reason (or any reason) for her discharge. When she received her termination notification via email on February 26, 2018, there was no formal reason indicated for said discharge.

### Count I: Violation of the Illinois Whistleblower Act

79.     Ms. Bowers realleges and incorporates by reference the allegations set forth in paragraphs 1-78.

80.     Under sections 15 and 20 of the Illinois Whistleblower Act, 740 ILCS 174/1 et seq., an employer may not retaliate against an employee for disclosing information to a government agency, where the employee has a reasonable cause to believe there was a violation of a federal or state law, rule or regulation.

81.     Ms. Bowers reported activity she believed to be illegal to the City of Chicago Human Resources Department, the EEO division and the IDHR.

82.     She informed them that the City was advertising for a position based on age and that they were failing to hire African Americans to the position of Auditor I.

83.     Ms. Bowers also complained about her own treatment, specifically the City's unfair discipline and refusal to promote her based on her race and age.

84.     Ms. Bowers had reasonable cause to believe the above actions were a violation of federal and state law

10

85. After these complaints, she was retaliated against by the City in the following manner: she was unfairly and harshly disciplined, she was not promoted to Auditor I even though she was qualified, and she was discharged from her position.

### Count II: Retaliatory Discharge (common law)

86. Ms. Bowers realleges and incorporates by reference the allegations set forth in paragraphs 1-85.

87. Ms. Bowers was discharged on February 26, 2018.

88. Ms. Bowers reported activity she believed to be illegal to the City of Chicago Human Resources Department, the EEO division and the IDHR.

89. She informed them that the City was advertising for a position based on age and that they were failing to hire African Americans to the position of Auditor I.

90. Ms. Bowers also complained about the City's failure to promote her based on her age and/or race, in violation of the law.

91. Ms. Bowers also complained about the City's unfair discipline of her and that she was disciplined more harshly than younger and non-African American employees.

92. The City showed a bias towards younger and non-African American employees being promoted to Auditor I.

93. Ms. Bowers was not promoted, and she was discharged for complaining about age and race discrimination.

94. Public policy in Illinois dictates that employees should be able to complain about and be free from illegal discrimination in the workplace.

### Count III: Discrimination based on race under the IHRA

95. Ms. Bowers realleges and incorporates by reference the allegations set forth in paragraphs 1-94.

11

96. Ms. Bowers was continuously discriminated against based upon race in violation of the Illinois Human Rights Act.

97. Ms. Bowers was the only Accounting Technician II in the tax division with a Bachelor's degree and the required minimum criteria of 15 credit accounting hours to qualify for the Auditor I position for which she interviewed 6 times and applied to 9 times.

98. Over the time she applied, there were approximately 40 vacancies.

99. No African American candidates were hired to the position of Auditor I until Ms. Bowers complained of such to the City EEO and the CCHR.

100. After her complaints, Joel Flores, the Deputy Director that interviewed but did not select her 9 times, finally hired an African American, Antinette Williams who remained in the position for a short while but then left because the position did not suit her.

101. Since Ms. Bowers was the only internal bidder for this position, she asked to be promoted again after Ms. Williams left but Ms. Bowers was denied again.

102. Management in the tax division at the behest of Joel Flores knowingly, intentionally and willfully discriminated against Ms. Bowers by continuously hiring less qualified non-African American City employees.

### Count IV: Discrimination based on age under the IHRA

103. Ms. Bowers realleges and incorporates by reference the allegations set forth in paragraphs 1-102.

104. Ms. Bowers was not promoted to the Auditor I position because of management's preference for younger candidates who acquired their degrees on or after May 2011.

105. Before Ms. Bowers reported to the unfair hiring unit of the Chicago Inspector General and the Department of Human Resources, the Auditor I position was posted three times with a preference for candidates that obtained their degree on or after May 2011.

106. Management in the tax division at the behest of Joel Flores knowingly, intentionally and willfully discriminated against Ms. Bowers by continuously hiring much younger employees (under 40).

## Count V: Retaliation under the IHRA

107. Ms. Bowers realleges and incorporates by reference the allegations set forth in paragraphs 1-106.

108. Ms. Bowers was disciplined, suspended after every interview where she subsequently asked why she wasn't selected for the Auditor I position.

109. Joel Flores would sit in on each of Ms. Bowers pre-disciplinary meetings. It was unprecedented for a Deputy Director to sit in on such meetings; no other person in his position prior to him had done such.

110. It was discovered that Joel Flores *only* sat in on these meetings for African American employees.

111. Mr. Flores did not sit in on the meetings of non-African American employees.

112. Mr. Flores was present at these meetings to signal that no matter the circumstances presented, these employees would be punished and that none of these grievances would advance to arbitration. This happened to Ms. Bowers and other African American employees.

113. In the grievance process, the Deputy is the second step/response, so his presence in said meetings made it impossible for him to be neutral in his second response in which he is supposed to evaluate the facts.

13

114. Mr. Flores also antagonized Ms. Bowers in these meetings, he was not a silent bystander.

115. Mr. Flores allowed Daniel Reichart to commence and subsequently discipline Ms. Bowers as the result of these meetings even though Ms. Bowers refuted the allegations, hearsay and false/unsubstantiated characterizations.

116. Daniel Reichart's only consistency was his irritation for Ms. Bowers' non-submissive "tone" and demeanor.

117. Also in violation of the Contract between AFSCME and the City of Chicago the attached 5/4/2018 Arbitration hearing was arbitrarily cancelled.

118. Upon receiving the EEOC Right to Sue, Ms. Bowers emailed the City respectfully requesting the arbitration hearing be reinstated and received a response almost five years to the date of this illegal termination that it would not.

### Jury Demand

Plaintiff requests trial by jury of all matters than can be so tried.

### Prayer For Relief

Wherefore, LaChelle Bowers, respectfully requests that the Court enter a judgment against Defendant City as follows:

A. A declaration that her rights under the EEOC, IHRA and the Illinois Whistleblower Act were violated by the City;

B. Any actual monetary losses/compensatory damages sustained by Ms. Bowers as a direct result of the violations by the City;

C. Punitive and Compensatory damages against the City;

D. The interest on the amount described in the items listed above against the City;

E. Restoration (including reinstatement) and make-whole relief for the loss of any employment benefits or other compensation denied or lost by Ms. Bowers against the City;

14

F.  An Order prohibiting the Defendant from any further prohibited discrimination against her;

G.  An award of reasonable attorney's fees;

H.  Costs incurred in filing and prosecuting this action; and

I.  Such additional relief as this Court deems appropriate and just.


Dated: June 26, 2023

Respectfully submitted,

*LaChelle Bowers*

LaChelle Bowers

15



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S. Dearborn Street
Chicago, Illinois 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 4/7/2023

To:  Lachelle Bowers
1616 E. 56ᵗʰ Street, #2508
Chicago, IL 60637

**Charge No: 21B-2018-00966**

EEOC Representative and email:

Sherice Galloway
Manager / State, Local & Tribal
sherice.galloway@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS** of your receipt of this notice. Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission:

Digitally Signed By:Julianne Bowman
4/7/2023

Julianne Bowman
District Director

Cc:

CITY OF CHICAGO
c/o Chief Executive Officer
121 N. LaSalle Street, Suite 700
Chicago, IL 60602



## DEPARTMENT OF FINANCE

### CITY OF CHICAGO

February 26, 2018

LaChelle Bowers
1700 E. 56th Street #508
Chicago, IL 60637

Dear Ms. Bowers,

I have reviewed the charges against you and your response. I have reached the following decision, which is effective at the close of business today, February 26, 2018.

You are hereby discharged from the position of Accounting Technician II. If you desire a hearing on this disciplinary action, please contact the Union. In the event that the Union intends to seek arbitration of this matter, the Union must submit a written request to the Department of Finance and the Department of Law, within (15) calendar days of the effective date of discipline, that it requests final and binding arbitration of the discipline. Late requests will not be accepted.

With respect to your medical benefits, coverage will terminate on the effective date of your separation. However, you may have rights to convert to individual medical coverage under the federal Public Health Safety Act (PHSA) legislation. You will be notified in the near future concerning such rights and the procedures for conversion.

If you are covered under life insurance, you may convert all or part of your coverage, basic and optional, to an individual life policy by submitting written application to the insurance company within thirty-one (31) days following your last day paid. It is your responsibility to obtain forms and make application for coverage. If you have any questions as to the continuation or conversion of your life insurance benefits, contact the Benefits Service Center at (877) 299-5111, or visit their website at www.cityofchicagobenefits.org.

If you are a member of the Municipal Employees' Annuity and Benefit Fund or deferred compensation plan and want information on your options upon separation, you may contact the Fund at (312) 236-4700 and Nationwide Retirement at (312) 443-1975.

Sincerely,

Erin Keane
City Comptroller

cc: Claudia Roberson
    Associate Director
    AFSCME

121 NORTH LASALLE STREET, SUITE 700, CHICAGO, ILLINOIS 60602

**From:** "Ramona Hallihan" <Ramona.Hallihan@cityofchicago.org>
**To:** "lachellechi@aol.com" <lachellechi@aol.com>, "Christopher Owen" <Christopher.Owen@cityofchicago.org>
**Cc:** "MLorenc@afscme31.org" <MLorenc@afscme31.org>, "Tom Edstrom" <TEdstrom@afscme31.org>, "CRobertson@afscme31.org" <CRobertson@afscme31.org>, "Charles Sheppard" <Charles.Sheppard@cityofchicago.org>
**Sent:** Mon, Feb 27, 2023 at 3:12 PM
**Subject:** RE: Agreement between Council 31 AFSCME and the City of Chicago.

Good afternoon,


Please contact AFSCME as they would determine whether or not to pursue arbitration.  Thank you.


Thank you,


Ramona Hallihan

Deputy Director

Finance and Administration Division

Department of Finance

312-747-2108

Ramona.Hallihan@cityofchicago.org


**From:** lachellechi@aol.com <lachellechi@aol.com>
**Sent:** Monday, February 27, 2023 11:45 AM
**To:** Ramona Hallihan <Ramona.Hallihan@cityofchicago.org>; Christopher Owen <Christopher.Owen@cityofchicago.org>
**Cc:** MLorenc@afscme31.org; Tom Edstrom <TEdstrom@afscme31.org>; CRobertson@afscme31.org; lachellechi@aol.com
**Subject:** Agreement between Council 31 AFSCME and the City of Chicago.


[Warning: External email]

Good morning,

I'm emailing for a final response to the attached unsettled grievances and cancelled arbitration hearing. Will the 5/4/18 arbitration hearing be rescheduled? please kindly respond not later than 48 hours, thank you.

LaChelle Bowers

Unsettled grievances:

01-15-27-0048 - 3 day suspension

01-15-27-0004 - 5 day suspension

01-15-27-0063 - 15 day suspension

01-16-27-0076 - 29 day suspension

01-16-27-0090 - 29 day suspension

01-15-27-0969 - Denied promotion

03-14-27-0611 - working in a higher rated position (Auditor I)

Cc: